**Concurring Opinion Filed March 19, 2024**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00878-CV

## IN RE THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF J.M.P. JR.

**On Appeal from the Probate Court No. 3
Dallas County, Texas
Trial Court Cause No. MI-92-1623**

## CONCURRING OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Concurring Opinion by Justice Miskel

As author of the majority opinion in this case, I concur to my own opinion and write separately to address two additional issues that are not essential to the holding of the majority opinion but that I believe could be dispositive of petitions brought under § 574.088 of the TMHC:

(1) J.M.P. Jr.'s argument that, as a matter of federal law, his federal firearms disability no longer exists, and

(2) the trial court should have considered the exercise of constitutional liberties by law-abiding citizens to be in the public interest under § 574.088(c)(2) of the TMHC.

Finally, I respond to the dissent's argument that J.M.P. Jr.'s desire to hunt is not evidence that removing his disability is in the public interest.

## I. J.M.P. Jr.'s Firearms Disability May No Longer Exist as a Matter of Federal Law

In the first part of issue one, J.M.P. Jr. argues that, under federal statutory law, "once a person has been discharged from ordered mental health services and is no longer under mandatory treatment, supervision or monitoring, the person is no longer disqualified from owning or purchasing a firearm."[1] J.M.P. Jr. contends that this federal law is incorporated in § 574.088 of the TMHC and requires the trial court to consider evidence about the circumstances that led to the imposition of his firearms disability and his mental health history. I construe his argument to be that the trial court erred when it denied his petition because, under 34 U.S.C. § 40911(c)(2)(B), his involuntary commitment was deemed not to have occurred for purposes of an 18 U.S.C. § 922(g)(4) firearms disability and, as a result, the trial court was precluded from finding that he was disqualified under 18 U.S.C. § 922(g)(4) and denying him relief from a firearms disability. The State did not respond to this argument made by J.M.P. Jr.

Under 34 U.S.C. § 40911(c)(1)(A), no federal department or agency may provide, for the purposes of a federal firearms background check, any record related to a person's commitment to a mental institution if the person has been fully released

---

[1] I note that J.M.P. Jr. does not cite 34 U.S.C. § 40911(c). However, the language he refers to is contained in that statute.

or discharged from all mandatory treatment, supervision, or monitoring. 34 U.S.C. § 40911(c)(1)(A); *see also Tex. Dep't of Pub. Safety v. Randolph*, No. 02-13-00025-CV, 2014 WL 1875826, at *2 (Tex. App.—Fort Worth May 8, 2014, pet. denied) (mem. op. on reh'g). Although that provision applies only to federal agencies and not states, the law goes on to separately say: where a record of a commitment may not be provided for a background check, the commitment shall be deemed *not to have occurred* for purposes of 18 U.S.C. § 922(g)(4) (i.e., the firearms disability). *See* 34 U.S.C. § 40911(c)(2)(B). The plain text of subsection (c)(2)(B) is not limited to federal agencies or departments.

In other words, upon full release or discharge from court-ordered mental health treatment, the commitment is deemed not to have occurred, and the federal firearms disability under § 922(g)(4) ceases to exist. *See also Randolph*, 2014 WL 1875826, at *5.

The trial court's 2022 order specifically states, "PURSUANT TO 18 U.S.C. § 922(g)(4) PETITIONER IS NO LONGER ELIGIBLE TO PURCHASE OR POSSESS A FIREARM OR AMMUNITION." However, it is undisputed, and the evidence conclusively establishes, that J.M.P. Jr. was fully released or discharged from all mandatory treatment, supervision, or monitoring more than thirty years ago. *See* 34 U.S.C. § 40911(c)(1)(A); *see also Randolph*, 2014 WL 1875826, at *6. The State conceded that there is no evidence of J.M.P. Jr. receiving any court-ordered mental health treatment subsequent to his full release from his involuntary

–3–

commitment in 1992. Nor did the State rebut J.M.P. Jr.'s evidence or show that he was discharged with any continuing care plan. *See, e.g.*, TEXAS HEALTH & SAFETY CODE ANN. § 574.081. Consequently, under 34 U.S.C. § 40911(c)(2)(B), upon J.M.P. Jr.'s discharge, his involuntary commitment was deemed not to have occurred for purposes of 18 U.S.C. § 922(g)(4). As a result, it appears that the state trial court lacked the power to render an order purporting to impose a federal firearms disability that did not exist as a matter of federal law. *See* 34 U.S.C. § 40911(c)(2)(B); *Randolph*, 2014 WL 1875826, at *5. In other words, if federal law provides that J.M.P. Jr. is not a prohibited person under 18 U.S.C. § 922(g)(4), there was no legal basis for the trial court to enter an order finding that J.M.P. Jr. is a prohibited person under 18 U.S.C. § 922(g)(4).

Federal law may have already granted J.M.P. Jr. relief from his federal firearms disability. And if it did, then as a matter of law, he is no longer prohibited under 18 U.S.C. § 922(g)(4) with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms. *See* 34 U.S.C. § 40911(c)(2)(B); *Randolph*, 2014 WL 1875826, at *5. Nevertheless, because I could find no clear authority directly addressing this application of 34 U.S.C. § 40911(c)(2)(B), I agree fully with the majority opinion's analysis of J.M.P. Jr.'s legal sufficiency arguments.

## II. The Exercise of Constitutional Liberties by Law-Abiding Citizens Is in the Public Interest.

In determining whether removing J.M.P. Jr.'s disability to purchase a firearm is in the public interest under § 574.088(c)(2) of the TMHC, the record also does not

show that the trial court considered the public interests served by the exercise of constitutional liberties.

The legislature determines public policy through the statutes it passes. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 665 (Tex. 2008). In creating the statutory remedy for relief from firearms disabilities, the Texas Legislature expressly recognized that it can be in the public interest to restore Second Amendment liberties to a person with a past involuntary commitment for mental illness.

Texas law recognizes, for example, that the exercise of First Amendment liberties is in the public interest. The Texas Legislature enacted the Texas Citizens Participation Act (TCPA)[2] to protect the exercise of First Amendment liberties by "encourag[ing] and safeguard[ing] the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. The TCPA "carries forward the state's commitment to the free exchange of ideas enshrined in our Texas and United States Constitutions." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 369 (Tex. 2023).

Likewise, in analyzing whether removing J.M.P. Jr.'s disability to purchase a firearm is in the public interest, the trial court should have considered the public

---

[2] *See Citizens Participation Act*, 82nd Leg. R.S., ch. 341, §§ 1–2, 2011 Tex. Gen. Laws 961, 961–64 (codified at TEX. CIV. PRAC. & REM. CODE ANN. §27.001–27.011) (section one states, "This Act may be cited as the Texas Citizens Participation Act.").

interest in encouraging and safeguarding the constitutional rights enshrined in the Second Amendment. The Second Amendment confers a fundamental, individual right to keep and bear arms. *See* U.S. CONST. amend. II; *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022); *McDonald v. Chicago*, 561 U.S. 742, 780, 791 (2010); *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 561 U.S. at 635.

To be sure, the United States Supreme Court has referenced longstanding prohibitions on the possession of firearms by the mentally ill. *See Heller*, 561 U.S. at 626–27; *McDonald*, 561 U.S. at 786; *Bruen*, 597 U.S. at 80–81 (Kavanaugh, J. concurring). But the United States Fifth Circuit Court of Appeals recently reviewed historical firearms prohibitions relating to "lunacy" and "ongoing mental illness" to interpret, by analogy, a firearms prohibition relating to controlled substances. *United States v. Daniels*, 77 F.4th 337, 349–50 (5th Cir. 2023). The Fifth Circuit acknowledged a precedent of regulating the combination of guns and intoxicating substances but stated "at no point in the 18th or 19th century did the government disarm individuals who used drugs or alcohol at one time from possessing guns at another" and concluded that "our history and tradition may support some limits on an intoxicated person's right to carry a weapon, but it does not justify disarming a sober citizen based exclusively on his past drug usage." *Id*. at 340. The Fifth Circuit

stated that this comparison "could justify disarming a citizen only while he is in a state comparable to lunacy. Just as there was no historical justification for disarming a citizen of sound mind, there is no tradition that supports disarming a sober citizen who is not currently under an impairing influence." *Id*. at 349. In analyzing the firearms prohibition at issue, the Fifth Circuit considered whether the defendant was "permanently impaired in a way that is comparable to *ongoing* mental illness." *Id*. at 350 (emphasis added).

In this case, the trial court's decision had the effect of disarming a citizen of sound mind based exclusively on his past commitment as a teen. J.M.P. Jr.'s firearms disability is based solely on an order signed when he was a minor. The government presented no evidence that J.M.P. Jr. is "in a state comparable to lunacy" or "permanently impaired" by "ongoing mental illness." To the contrary, J.M.P. Jr.'s uncontroverted evidence demonstrated that he was an "ordinary,"[3] "law-abiding,"[4] "responsible"[5] citizen of "sound mind"[6] over the three decades between his brief commitment as a teenager and the trial of this cause when he was a middle-aged man.

Because there was no evidence to show J.M.P. Jr. is presently incompetent or a danger to public safety—and ample positive evidence of each factor affecting the

---

[3] *Bruen*, 597 U.S. at 8.

[4] *Bruen*, 597 U.S. at 8; *Heller*, 554 U.S. at 635.

[5] *Heller*, 554 U.S. at 635.

[6] *Daniels*, 77 F.4th at 349.

public as set forth in the statute—the trial court should have considered the public benefit yielded by vindicating a competent person's fundamental liberty interests.

## III.   The Use of Firearms to Control the Feral Hog Population Is in the Public Interest of the State of Texas

In addition to the public interests served by the exercise of federal constitutional liberties, this case involves public interests specific to Texas. The record shows that J.M.P. Jr. testified that he attempted to purchase a hunting rifle, in part, to hunt wild hogs on his ranch. *See* TEX. CONST. art. I, § 34 (Texas bill of rights includes right to hunt). The dissent is skeptical of J.M.P. Jr.'s argument that his ability to own guns for hunting is in the public interest. However, the public policy of Texas affirmatively promotes the hunting of feral hogs.

Under Texas law, feral hogs are "depredating animals" who cause damage or destruction to property, commercial crops, or native environments. TEX. PARKS & WILD. CODE ANN. § 43.103(2); Tex. Parks & Wild. Dep't, *Hunting Regulations*, (Sept. 1, 2023–Aug. 31, 2024) (definition of "depredation"). Further, the Texas Department of Agriculture considers the growing population of feral hogs to be a serious problem with negative health and economic impacts. *See Tex. Dept. of Agriculture v. Wild Boar Meats, LLC*, No. 03-17-00514-CV, 2018 WL 3748677, at *1 (Tex. App.—Austin Aug. 8, 2018, pet. denied) (mem. op.).

To address the public interest in reducing the number of feral hogs and minimizing the destruction they cause, the Texas Legisature has enacted statutes relaxing almost all hunting restrictions with respect to this invasive species. Under

Texas law, no license or permit is required to hunt feral hogs on private property. PARKS & WILD. §§ 42.002(c); 42.005(f); 43.158; *see also* Tex. Parks & Wild. Dep't, *Hunting Regulations*. Feral hogs can be hunted from aircraft, including helicopters and hot air balloons. PARKS & WILD. §§ 43.102, 43.1075, 43.1076; *see also* 31 TEX. ADMIN. CODE § 65.151(c). Hunters can use drones to track feral hogs. 31 ADMIN. §§ 65.151, 65.152. The Texas Parks and Wildlife Code contains no season limits for hunting feral hogs, no bag limit on how many feral hogs hunters can kill, and the restrictions on hunting wildlife at night or with artificial lights do not apply to feral hogs. *See* PARKS & WILD ch. 62 (restrictions on hunting "wild" game); PARKS & WILD. § 1.101(4) ("wild" game does not include "exotic livestock"); TEX. AGRIC. CODE ANN. § 161.001(a)(4) ("exotic livestock" includes feral hogs).

The dissent believes that J.M.P. Jr.'s desire to hunt is no evidence that lifting J.M.P. Jr.s' firearms disability would be in the public interest. However, J.M.P. Jr.'s evidence regarding his purpose for seeking to restore his firearms liberties—to be able to hunt, including feral hogs—exemplifies the affirmative public policy of Texas and is therefore in the public interest.

## IV. Conclusion

I determined it is necessary to write separately to address these issues. I believe the dissent's claim that J.M.P. Jr. "presented no evidence showing removing the disability is in the public interest" merited a response. More importantly, if the evidence shows that a petitioner's federal firearms disability no longer even exists

as a matter of federal law, then Texas courts would lack the power, in cases brought under § 574.088 of the TMHC, to continue to impose a federal firearms disability. Additionally, in making a finding about whether removing a petitioner's disability to purchase a firearm is in the public interest under under § 574.088(c)(2) of the TMHC, a court should consider that the public interest is benefited by the exercise of the constitutional liberties protected by the Second Amendment.

For these reasons, I believe it important for the Texas Supreme Court to clarify whether 34 U.S.C. § 40911(c)(2)(B) applies to state courts in proceedings under § 574.088 and to make clear that the exercise of Second Amendment liberties by a law-abiding, responsible person of sound mind is in the public interest and weighs in favor of a finding under § 574.088(c)(2) of the TMHC.

/Emily A. Miskel/
EMILY A. MISKEL
JUSTICE

220878cf.p05